were to be recovered and distributed in general, as under the collection act of March 2, 1799, c. 128.

These are a part of the provisions, which composed the system of restrictions on commerce and navigation. Almost all the provisions were to be carried into effect by the vigilance of custom-house officers. Though not expressly named, it seems quite impossible to presume, that the provisions which I have cited did not presuppose their agency. The collectors could alone grant or refuse clearances. The lading could alone be made under the inspection of the inspectors and other officers of. the customs. The authority of interposing to prevent an illegal exportation or departure, or of seizing upon the commission of an offence, could not be exercised without examining the state and condition and papers of the vessel and cargo. In short, without an implied authority, from the nature of their offices and the requisitions of the laws, to enter on board, and, in the language of the indictment, "to discover if any goods. &c., had been laden, &c.,on board of the said vessel, for the purpose of being exported therein from the United States," I do not see that it could have been possible, either to execute the known provisions of the law, or to have avoided infringements of the rights of the citizens. Indeed, the authority in the president of the United States to instruct "the officers of the revenue," in carrying into effect the embargo, and aiding with military force "the custom-house officers," in the execution of their duties, presupposes that the law had already devolved these duties upon them. It is conceded that an inspector had a right to go on board a vessel to examine, &c., if any breach of the laws of the United States had been committed. Now, at the time when this transaction took place, it was a breach of law to lade goods, &c., for the purpose of illegal exportation. It would follow, therefore, that the inspector had an authority to go on board to examine into this fact. If the inspector had not this authority, neither had the collector; for it is no where expressly given; and if it be necessary or proper completely to execute other duties, it would result by implication to an inspector as well as a collector. As I have before observed, the laws seem to consider it already existing, and extend the authority to commanders of revenue boats, which by law are to be appointed for the use of surveyors and inspectors. Act March 2, 1799, c. 128, § 101 [1 Story's Laws, 633; 1 Stat. 678, c. 22]; and Act April 25, 1808, c. 66, § 7 [2 Stat. 501].

It is certainly not to be inferred from this reasoning, that officers of the customs have an unlimited authority over the commercial property of the citizens. In the nature of things they must have some implied powers. The legislature would, in vain, attempt to enumerate them; and I think it may be safely assumed, that they may exercise all powers necessary and proper to effectuate the manifest intentions of the law connected with the duties of their office. To them is committed the general management of the revenue laws, be they of exportation or importation; and I think it would be dangerous in the extreme to adopt the position that every act of theirs must be shown sub pede sigilli. They act at their peril. If they invade the rights of the citizens under color of office, this court will, I trust, be the last to afford them a shelter or a refuge.

On the whole, after some doubt and much reflection, I am now satisfied that the last objection ought not to prevail; and that the opinion of the court at the trial was well founded in principle. My search in the books has not enabled me to detect a single authority or principle, which is shaken or opposed in coming to this determination.

Judgment on the verdict.

UNITED STATES (SEARS v.). See Case No. 12,592.

## Case No. 16,248.

### UNITED STATES v. SECOND NAT. BANK OF NEW JERSEY.

[Cited in U. S. v. Central Nat. Bank, 6 Fed. 135. Nowhere reported. Tried by jury in district court. and affirmed on writ of error in circuit court. No opinion filed in either court.]

## Case No. 16,248a.

### UNITED STATES v. SEELEY.

[2 Betts, C. C. MS. 58.]

Circuit Court, S. D. New York. Jan. 15, 1844.

OBSTRUCTING JUSTICE—CONTEMPTS—CONSTRUCTION OF STATUTE—TAKING AWAY AN ATTACHED VESSEL.

[1. The taking away of a vessel by her owner, after she has been attached by the marshal, but while she is not in the actual custody of himself or a keeper, does not constitute the offence of impeding or obstructing justice. within the meaning of the second section of the act of March 2, 1831 (4 Stat. 487), entitled "An act declaratory of the law concerning contempts of court."]

[2. It seems that the act was not intended to create any new offences, but is limited to cases which were recognized as contempts under the pre-existing law. and that the second section relates to those cases known as "constructive contempts."]

[3. But even if it were intended to create a new offence, unknown to the common law, yet in construing the statute the common-law meaning of the terms employed is to be observed.]

[4. The expressions "obstruct" and "impede" the due administration of justice, as used in the act, refer only to direct acts of violence or menace, disturbing the ordinary functions of the court.]

[Indictment of Albert Seeley and others for obstructing and impeding the due administration of justice, contrary to the act of March 2, 1831.]